HUDSON MILLING COMPANY, RESPONDENT, v. WILLIAM F. HIGGINS, APPELLANT.

Submitted July 7, 1913—Decided November 17, 1913.

The organization of a new corporation being contemplated to take over the property and business of an insolvent corporation, one B, the capitalist furnishing the funds, agreed in writing with D, the president, and his wife, principal stockholders of the old company, that debits found on its books against D should be canceled and discharged by the new company so far as said company should be enabled to cancel and discharge the same.

Subsequently the assets of the old company were transferred to the new company in bulk and without reservation of the D account. *Held,* that as the new company presumably paid full value for such assets, and received no benefit of the agreement between B and D, it was in no way bound by such agreement.

On appeal from Hudson County Circuit Court.

For the appellant, *Roberson & Demarest.*

For the respondent, *Robert S. Hudspeth.*

The opinion of the court was delivered by

PARKER, J. The suit is by the assignee of a book account for lumber and mill work sold and delivered by plaintiff's assignor, a corporation called the Doyne Lumber and Milling Company. The plaintiff had verdict and judgment for the amount claimed, less a credit thereon of $52.

The defence was rested on the claim that the account was incurred at the instance of William Doyne, president and active manager of the Doyne Lumber and Milling Company, and that he had induced defendant to undertake the erection of some houses and to purchase of the company the mill work therefor, under an agreement that defendant, who was a plumber, should do plumbing work for the company and also for Doyne's wife on houses belonging to her, and that his account, both for the company's work and for Mrs. Doyne's, should be credited to him on the books of the milling company, and the amount applicable to Mrs. Doyne's work then recharged by the company on its books to Doyne, the company thus paying Mrs. Doyne's plumbing bill by goods sold and expecting to get its money back through settlement of Doyne's account with it. If this defence existed in fact, and was valid, it was of course maintainable as against the subsequent assignee of the account. *Practice act of* 1903, *Pamph. L., p.* 540, § 19. The trial court left to the jury the question whether the agreement between Doyne and defendant had actually been made, and charged in effect that if made it would be binding on the Doyne company (and of course on its assignee) if

Doyne had the authority in his capacity of president to extend credit on behalf of the company, because he could then extend that credit to himself; and that such authority could be inferred from a course of practice, or the acquiescence of the directors, without formal corporate action. The verdict necessarily implied either that Doyne did not possess such authority, or that he had not made the agreement claimed, or both.

The first two grounds of appeal relate to the rejection by the court of evidence relating to the contents of an agreement between William Doyne and his wife, and one Julius Berghoff, in March, 1910. It appeared that the Doyne company had become insolvent and a receiver had been appointed; that Doyne was trying to continue the business, and that the scheme was to have Berghoff buy its property and assets from the receiver and transfer them to a new corporation to be formed. This was in fact done in April, by an assignment and bill of sale from the receiver to Berghoff's agent, named Weller, of all the property and assets including accounts receivable, and another bill of sale from Weller to the plaintiff, Hudson Milling Company, covering the same subject-matter. The rejected agreement provided for this course of action, and defendant relied on a clause in it providing that "all claims and demands found on the books of the Doyne Lumber and Milling Company against said William Doyne    *    *    * shall as soon as the new corporation secures control of the new company (*sic*), be canceled and discharged so far as the new company may be enabled to cancel and discharge the same." The argument was and is that this was evidential to show that Berghoff, and through him the new company, had agreed to wipe out Doyne's debit account, and that if as claimed, that account showed a debit corresponding to defendant's plumbing bill for work done on Mrs. Doyne's property, the new corporation was bound by the agreement and could not recover for the goods sold to the defendant up to that amount. We fail to see any force whatever in this proposition. Assuming that an agreement by the Doyne company to pay Mrs. Doyne's debt or that of her husband to defendant by turning over goods to that amount and charging them to

Doyne was not *ultra vires* (which is at least questionable), and that if *ultra vires* the transaction is within the rule laid down in *Camden and Atlantic Railroad Co.* v. *May's Landing Railroad Co.,* 19 *Vroom* 530, 559, still the agreement related solely to Doyne's account and in no way to that of defendant. Moreover, it is plain that Berghoff in agreeing for an unformed corporation was acting substantially in the capacity of a promoter, and that unless and until his action was adopted by the new company when formed or was connected with some special benefit to it, such company was in no way bound thereby. *Thomp. Corp. Off.* (*2d ed.*), § 91 *et seq.; Cook Corp.* (*7th ed.*), § 707; 10 *Cyc.* 262; *Braddock* v. *Philadelphia, &c., Railroad Co.,* 16 *Vroom* 363; *Joslin* v. *Stokes,* 11 *Stew. Eq.* 31.

No such adoption or benefit appears. The accounts of the Doyne company were, as stated, afterwards assigned without reservation to Berghoff's agent, and reassigned by him to the plaintiff. Presumably full value was paid. It would have been a simple matter to except the Doyne debit (if one existed) from the property transferred to the new company; but this was not done. As the trial judge remarked, if defendant has any remedy on this agreement it is by action against Berghoff. Still again, the clause quoted speaks of claims and demands found on the books against William Doyne. The evidence seems to show without contradiction that the debit to Doyne of $708.91 in June, 1910, was placed there some two or three months after the agreement, and two months after the formation of the plaintiff corporation and the assignment from Weller; and plainly the clause should not be held to cover any debits that did not exist on the books at the time the agreement was made. For all these reasons the agreement was irrelevant and inoperative as to defendant, and was properly excluded.

The other grounds of appeal may be dismissed in a few words. The other rulings on admission of evidence were correct, or if there was error it was harmless. Exception is taken to some rather forcible remarks by the court, prompted by what the judge evidently considered an improper char-

acterization by counsel of the general conduct of the trial. If the language used by the judge was stronger than necessary, it was at least provoked by counsel, and the disagreement was adjusted by an explanation or apology by counsel and its acceptance by the court before the case went to the jury.

The nonsuit was properly denied. It is argued that the plaintiff's books of account were discredited by mutilation; but this goes to their credibility rather than their competency.

Declarations by William Doyne after the insolvency of his company were properly excluded. His official powers were terminated or suspended, and his admissions therefore could not bind the new company.

The last point made is that the verdict is contrary to the undisputed evidence. But there was no motion to direct a verdict and no exception or objection to the charge, which left the case to the jury. The point is therefore without support in the record.

The judgment will be affirmed.

*For affirmance*—The Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, , Minturn, Kalisch, Vredenburgh, Congdon, White, Terhune, Heppenheimer, JJ. 14.

*For reversal*—None.